UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| *Petitioner,* | § | |
| | § | |
| VS. | § | MISC. ACTION NO. 4:17-MC-1557 |
| | § | |
| **JOHN PARKS TROWBRIDGE,** | § | |
| | § | |
| *Respondent.* | § | |

## MEMORANDUM & ORDER

Pending before the Court is the Request for Grant of Immunity Against Potential Self-Incrimination filed by Respondent John Parks Trowbridge, Jr. (Doc. No. 14.) Petitioner, the United States of America through the Internal Revenue Service (IRS), has filed a Response out of time, as well as a motion asking this Court to accept its late response. (Doc. Nos. 16, 17.) Based on consideration of the filings and applicable law, the IRS's motion for acceptance of its late response is granted, and Respondent Trowbridge's request is denied.

### I. BACKGROUND

This is not the first fight between these litigants to find its way into federal court. *See, e.g., Trowbridge v. Internal Revenue Service*, No. 4:13-cv-1850 (S.D. Tex. 2013–14); *United States v. Trowbridge*, No. 4:99-mc-387 (S.D. Tex. 1999–2001). The story goes back at least to 1996, when the IRS conducted an examination concerning tax years 1991 to 1995. (Doc. No. 21 at 13.) Other examinations and investigations followed, including an apparently long-lasting criminal investigation. (*Id.* at 16.)

1

In Trowbridge's telling, his issues arise from the IRS's "fail[ure] to identify any particular statute that makes [him] liable to tax." (*Id.* at 15.) He says he has repeatedly asked the IRS to identify its statutory taxing authority, and he insists that no federal authority has ever attempted to answer his question. (*Id.* at 17.) Without specific guidance, the complexity of the Internal Revenue Code is too great, and so he "cannot in good conscience or under penalty of perjury" file a tax return. (*Id.* at 16.) The patent frivolousness of these and other arguments has brought Trowbridge consistent defeat—as well as sanctions, oftentimes—in previous disputes. *See United States v. Trowbridge*, 591 F. App'x 298 (5th Cir. 2015); *Trowbridge v. C.I.R.*, 378 F.3d 432 (5th Cir. 2004); *United States v. Trowbridge*, 251 F.3d 157 (5th Cir. 2001).

The present dispute reached this Court in June 2017, when the IRS filed a petition to enforce a summons for Trowbridge to appear, testify, and produce documents so that his tax liability for the years 2011 to 2014 could be calculated. (Doc. No. 1.) This Court issued an Order to Show Cause (Doc. No. 2) and, after a hearing, an order compelling compliance with the IRS's summons (Doc. No. 11). The Court also denied motions for dismissal and summary judgment that Trowbridge had filed in the interim. (Doc. Nos. 4, 10.)

On October 2, 2017, Trowbridge appeared at the IRS's office to meet with Revenue Agent Kendria Bruno and Special Counsel Lewis Booth. (Doc. No. 15 at 4–5.)[1] Early in their interview, before Bruno or Booth had raised any specific issues, Trowbridge sought assurance that he would not face criminal prosecution. (*Id.* at 9.)

Booth explained that Bruno worked on the civil side of the IRS and wanted only to determine Trowbridge's tax liability. (Doc. No. 15 at 9.) He clarified that no criminal investigation was underway and no referral had been made to the U.S. Department of Justice.

---

[1] Trowbridge has moved the Court to take judicial notice of the transcript of this interview. (Doc. No. 15.) It will do so.

(*Id.* at 9–10.) Booth refused, however, to guarantee that a criminal prosecution would never occur, given the possibility that the investigation could uncover "a clear violation of the criminal statutes." (*Id.* at 9.) He then informed Trowbridge of *United States v. Tweel*, 550 F.2d 297 (5th Cir. 1977), which excludes evidence in criminal prosecutions obtained by deliberately deceiving the defendant about the criminal nature of an investigation against him or her.

Booth's explanation of the distinction between civil and criminal investigations went on at some length. (Doc. No. 15 at 9–36.) Booth and Trowbridge also discussed and disagreed on the application of the Fifth Amendment privilege against self-incrimination. (*Id.* at 36–41.) Bruno then took over. Her questions about Trowbridge's place of residence prompted Trowbridge to invoke the Fifth Amendment. (*Id.* at 51.) Trowbridge then answered certain questions and invoked the Fifth Amendment for others. (*Id.* at 52–62.) Finally, Trowbridge refused to produce any documents for the same reason he refused to answer questions, which brought the interview to an end. (*Id.* at 62–63.)

During the interview, Trowbridge also tried to make his core argument against tax enforcement—the IRS's failure to identify "which tax would be applied" to him, among the many on the statute books. (Doc. No. 15 at 42.) Unlike the protracted discussion of the distinction between civil and criminal proceedings, discussion of this idea was brief. Booth cut Trowbridge off, warning that he was "veering close to arguments that the Government thinks may be frivolous in nature." (*Id*. at 43.)

## II.     APPLICABLE LAW

The U.S. Constitution gives Congress the power to lay and collect taxes. U.S. Const. Art. 1, § 8, cl. 1. The Sixteenth Amendment specifically authorizes taxes on incomes. U.S. Const.

amend. XVI. The statutory framework for levying, calculating, and collecting taxes is the Internal Revenue Code, found in Title 26 of the U.S. Code. The Internal Revenue Code gives district courts "jurisdiction by appropriate process to compel [the] attendance, testimony, or production of books, papers, or other data" of "any person summoned under the internal revenue laws." 26 U.S.C. § 7402(b). Another provision, 26 U.S.C. § 7604(a), confers the same authority. "[T]he effective operation of the revenue system requires that the Commissioner [of Internal Revenue] be free to inspect taxpayers' records in order to ensure compliance with the revenue laws." *United States v. Roundtree*, 420 F.2d 845, 850–51 (5th Cir. 1969).

"[T]ypically it is unclear whether a given tax investigation will lead to criminal proceedings. The IRS often must see the taxpayer's records before it can make that determination." *Roundtree*, 420 F.2d at 850 (citing *United States v. Powell*, 379 U.S. 48, 53–54 (1964)). "It would be a misuse of the tax summons for the IRS to endeavor to use it to obtain evidence for use in an existing criminal prosecution." *Venn v. United States*, 400 F.2d 207, 210 (5th Cir. 1968). In addition, "if the purpose of the summons is … solely to build a criminal prosecution, the courts will not enforce the summons." *Roundtree*, 420 F.2d at 847. "However, the mere fact that the evidence obtained through the summons may later be used against the taxpayer in a criminal prosecution is no barrier to enforcement [of the summons]." *Venn*, 400 F.2d at 210–11.

When the Fifth Amendment privilege against self-incrimination is asserted under these circumstances, "the burden of proof is on the taxpayer." *Roundtree*, 420 F.2d at 851 (citing *Powell*, 379 U.S. at 58). The privilege against self-incrimination "applies only when the possibility of self-incrimination is a real danger, not a remote and speculative possibility." *Steinbrecher v. C.I.R.*, 712 F.3d 195, 197 (5th Cir. 1983) (citing *Zicarelli v. New Jersey State*

*Comm'n of Investigation*, 406 U.S. 472, 478 (1972)). "The witness is not exonerated from answering merely because he declares that in doing so he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified." *Id.* at 197–98 (quoting *Hoffman v. United States*, 341 U.S. 479, 486 (1951)).

### III. DISCUSSION

Before reaching Trowbridge's Request for Grant of Immunity, the Court must decide whether to consider the IRS's late-filed Response. (Doc. No. 16.) The prescribed period for responses is twenty-one days. S.D. Tex. L.R. 7.3–7.4. The IRS's Response arrived a month after Trowbridge's Request. "When an act may or must be done within a specified time, the court may, for good cause, extend the time … on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1). The Supreme Court has said that "excusable neglect" can mean "inadvertence," "mistake," "carelessness," or "intervening circumstances beyond the party's control," where appropriate in the district court's judgment. *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 388 (1993). The IRS pleads inadvertence, noting confusion about the titling of Trowbridge's filing. (Doc. No. 16 at 2–3.) The Court finds neglect on the part of the IRS, but it is excusable. The delay was brief, and it has neither evinced bad faith nor caused any real harm. Given that, and given that the Response is an aid to the Court's deliberation, the Court will accept it.

Trowbridge requests a broad grant of immunity. (Doc. No. 14 at 5–6.) To the extent Trowbridge seeks to be immunized against any criminal prosecution for violation of tax laws, the Court finds that he seeks a form of relief that the Court cannot provide. It is not for the judiciary to dictate the executive branch's exercise of its prosecutorial discretion.

To the extent Trowbridge seeks to be freed of his obligations under the IRS summons, he has not met his burden. As noted, the possibility of self-incrimination must be a real danger, not a remote and speculative possibility, for the privilege against it to apply. Counsel and personnel for the IRS assiduously explained to Trowbridge the civil nature of the current investigation and the clear separation from the IRS's criminal function. On the basis of these representations, Trowbridge's refusal to answer questions and to produce the summoned documents was not justified. The criminal investigation he evidently underwent years before is not an adequate basis for invoking the privilege against self-incrimination now.

If, in the future, the IRS's representations are revealed to be false, the law offers protections. *See Tweel*, 550 F.2d 297. Until then, or until Trowbridge can demonstrate that the current summons is for the purpose of building a criminal case against him, the Fifth Amendment does not negate Trowbridge's obligation to comply with the law or shield him against its enforcement.

To be clear, Trowbridge's history of frivolous and sanctionable litigation is not the basis for this Court's rejection of his request for a grant of immunity. The U.S. Constitution protects him whether or not his arguments on tax liability have merit. His history does warrant a warning, however. Trowbridge knows full well the sanctions that courts can impose, having experienced them before. *See, e.g.*, *Trowbridge*, 378 F.3d at 433 (affirming a $25,000 sanction imposed by the Tax Court and adding a $6,000 for the frivolousness of his appeal). The Court hopes that Trowbridge will hereafter comply with the Court's orders and the IRS's lawful summons, so that no further sanctions will be necessary.

## IV. CONCLUSION

The Motion to File Petitioner's Response Out of Time filed by the Petitioner, the United States of America through the Internal Revenue Service, is **GRANTED**. Respondent John Parks Trowbridge, Jr.'s Request for Grant of Immunity is **DENIED**.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 22nd day of November, 2017.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE